# Richmond.

PAIRO v. BETHELL, ASSIGNEE.

Absent, *Moncure*, P.

1. The act of 1870, in respect to mechanics' liens (Code of 1873, ch. 115, §§ to 11, inclusive), is much more comprehensive than the previous law which is left as it was; it extends the lien to a larger class of persons, and prescribes a different mode of acquiring the lien; it applies to contracts written as well as not written, and the remedy by motion as well as by bill is provided.

2. Hence, if the contract be in writing, the lien may be acquired either under the previous statute (§ 2, ch. 115) by the recordation of the contract as therein provided, in which case the remedy would be by bill in equity; or it may be acquired or secured under the act of 1870, by filing in the proper clerk's office and having recorded "a true account of the work done or materials furnished," &c., as provided by § 4 of said chapter.

3. The proceeding by motion under this statute is a summary remedy in equity, assimilated in some of its features to a proceeding at law; the motion may be heard without formal pleadings; the testimony is given *viva voce* before the court, and if objections are made to the rulings of the court, they may, it seems, be put into the record by bills of exceptions. All this is anomalous in a court of equity, but it results necessarily from the proceeding authorized.

4. A party has no absolute right to a trial by jury of an issue joined in such a motion, it being in the nature of an equitable remedy, and the statute (ch. 163, § 8, Code 1873) not applying to motions which partake of the nature of an equitable proceeding to enforce a charge on real estate.

5. On such a motion, the court might, perhaps, in the exercise of a sound discretion, direct an issue or issues under circumstances which would warrant such direction in a regular chancery suit; and so, if the case required it, there seems to be no good reason why there might not be a reference to a commissioner to make enquiries and to take and state accounts.

6. On such a motion, proof of the recordation of the account and statement, under the statute, is proper, if such evidence is offered not to contradict or vary the written contract, but merely to prove the signing of the contract by the parties and the performance of it on the part of the builders.

7. As the statute requires all parties in interest to be before the court, the assignors of the contract are proper, if not necessary, parties, and may be made such on their motion.

8. The statute gives a lien not only on the buildings, but also on "so much land therewith as shall be necessary for the convenient use and enjoyment of the premises." In the absence of proof to the contrary, a lot in a town, such as is described in this case, is necessary to the convenient and reasonable enjoyment of the buildings put upon it.

9. Real property of value should be sold on a reasonable credit, unless under peculiar circumstances, which should appear by the record. But this rule has no application to sales under mortgages, deeds of trust or other instruments of writing, in which the terms of sale are agreed upon. In such cases the contract of the parties governs, and the court is left without discretion as to the terms.

On the 16th of June, 1877, William D. Bethell, assignee of Thomas & Bethell, served a notice on John L. Pairo, that he would move the corporation court of the town of Danville, on the fifth day of the following July term thereof, to enforce a mechanic's lien, under ch. 115, Code 1873, on a house and lot in said town for $3,000, subject to several credits for money paid at different dates, which lien was founded upon a written contract made on the 2d of September, 1875, between the said Pairo and Thomas & Bethell, whereby the said Thomas & Bethell agreed to build and furnish materials and labor for a two-story framed dwelling-house and out-house on a lot of said Pairo, in the town aforesaid. In consideration whereof, the said Pairo made two negotiable notes for $1,500 each, dated January 27th, 1876, and payable, with interest, to the order of said Thomas & Bethell, eight and twelve months after date respectively. The said contract, with a sworn account showing the balance due thereon, was recorded in the clerk's office of said court on the 10th of February, 1877, within thirty days, as

was alleged, after the completion of said work; and the said notes, before their maturity, were transferred to the complainant by the said Thomas & Bethell, with all their rights of enforcing payment of the same.

Upon the hearing, the court, overruling sundry motions of the defendant, entered a decree that unless the said John L. Pairo should pay to the complainant the debt demanded, subject to certain credits, within twenty days from the date of the decree, the house and lot in the proceedings mentioned should be sold at public auction, for cash as to so much money as should be necessary to pay the costs of sale and the lien of said W. D. Bethell, with the costs of enforcing the same, and as to the residue of the purchase money on a credit of six and twelve months, etc.; and from this decree the said John L. Pairo obtained an appeal and *supersedeas* from a judge of this court. The proceedings are sufficiently stated in the opinion of *Burks*, J.

*Cabell & Peatross*, for appellant.

*Withers & Barksdale*, and *Berryman Green*, for appellees.

BURKS, J., delivered the opinion of the court.

This was a summary proceeding in the court below by motion, on notice, under the statute (Code of 1873, ch. 115, § 10), to enforce a mechanic's lien for the price of work done and materials furnished in the construction of buildings on a lot in the city of Danville. At the hearing the court sustained the complainant's claim and by decree ordered the sale of the house and lot to satisfy the lien. From this decree an appeal was allowed the defendant.

The contract between the builders and the owner of the lot was in writing, signed by the parties, and there was no dispute about its execution or its meaning. The main

ground of defence on the merits was, that the work was done in an unskillful and unworkmanlike manner, and much of the materials and lumber used in the building was of an inferior character, and that by breach of the contract in the particulars mentioned the defendant had sustained damage to the extent of at least $1,000, which he prayed to have deducted from the complainant's demand.

It is contended that this defence was sustained by the proofs, and that the court erred in holding otherwise.

The witnesses were examined in court and their testimony (not the facts proved) is certified. We do not propose to discuss it. It is sufficient to say, that the decided weight of the proof is that the builders performed the contract on their part in every essential particular. Both of them testified and so did the appellant, but the testimony of the latter as to the alleged defects, either in the work done or materials used, is very unsatisfactory, and the witnesses on his behalf gave him but little aid. So far as as there was any conflict between the testimony of the builders and that of the appellant, the court gave credit to the former, and in such a case this court will presume that the court which saw and heard the witnesses examined decided correctly. *Dudleys* v. *Dudleys*, 3 Leigh, 436.

Most of the remaining questions arise on bills of exceptions taken by the appellant to rulings of the court in the progress of the hearing.

The motion for a continuance of the cause on the ground of the absence of a witness was properly overruled. Such a motion, we know, is always addressed to the sound discretion of the court, and though the action of the court in overruling it may be reviewed in the appellate court, it will not be reversed unless plainly erroneous. 1 Rob. Prac. (old Ed.), 252 ; *Hewitt's case,* 17 Gratt. 443 ; *Roupell's case,* 28 Gratt. 930. The witness was not summoned and no efforts of any kind were made to procure his attendance. The

appellant failed to use the diligence required by the law in such cases.

The demurrer and the motion to dismiss the cause rest on the assumption, either that no lien was acquired under the statute, or, if acquired, that the proper proceeding to enforce it was by bill in equity and not by motion.

It is contended that when the contract for the erecting or repairing any building is in writing, signed by the owner of the land on which the building is located, no lien is created unless and until the writing is duly admitted to record, in the mode prescribed by chapter 117 of the Code of 1873, in the county or corporation wherein the land lies, and that the only remedy for enforcing the lien thus created is by bill. In other words, that the right and the remedy in such case are given and governed exclusively by section 2 of chapter 115 of the Code of 1873. We do not concur in this view. This section (2) is the same as section 2, chapter 119, of the Code of 1849, amended by the act passed April 13, 1867 (Acts of 1866-7, pp. 806-6, ch. 36), and the other sections of chapter 115 of the Code of 1873, from 3 inclusive to 11 inclusive, are the sections of the act approved July 11, 1870 (Acts of 1869-70, ch. 294). The numbers of the sections are changed for convenience by the compiler of the Code of 1873, but the law is not altered. The act of 1870 is a separate and distinct statute. It is much more comprehensive than the previous law, which is left as it was. It extends the lien to a larger class of persons (§ 3, ch. 115, Code of 1873), and prescribes a different mode of acquiring the lien. It applies to contracts, as well those written as those not written. It is not, as contended, restricted to the latter, and the remedy by motion as well as by bill is provided. (Sections 10, 11 of the Code). Hence, if the contract be in writing, the lien may be acquired either under the first statute (§ 2, ch. 115 of the Code of 1873), by the claimant having the contract recorded as

therein provided, and in such case the remedy would be by bill in equity, or it may be acquired or secured by such claimant, under the act of 1870, by filing in the proper clerk's office and having recorded "a true account of the work done or materials furnished, sworn to by said claimant, or his agent, with a statement attached, signifying his intention to claim the benefit of said lien, and setting forth a brief decription of the property upon which he claims the lien." (Section 4 of the Code). The provisions of this section having been complied with in the present case, the lien of the builders was perfected and they became entitled to the remedy by motion or by bill (§§ 10, 11), at their option, to enforce it. Their assignee, of course, stands in their shoes.

The proceeding by motion is a summary remedy in equity, as is to be inferred not only from the nature of the right to be enforced, but also from the language employed in the statute. The right is a specific lien or charge upon real estate which could not be conveniently enforced in courts of law according to the usual forms of procedure in such court, and by the motion given the act seems to contemplate substantially a proceeding in equity, assimilated, however, in some of its features to a proceeding at law. The section (10) is in these words: "The liens created by this act may be enforced by motion, upon reasonable notice, in the county or corporation court of the county or corporation in which the lien is recorded, whether the defendant reside in such county or corporation or not; and the owner of the property, or any other other person interested therein, may, upon like notice to the lienholder, move said court to dismiss and release said lien. In either case, the court, having all the parties in interest before it, shall adjudge the right of the case in all respects, and enforce the same by its decree."

The motion is or may be heard without formal plead-

ings; the testimony is given *viva voce* before the court, and if objections are made to the rulings of the court, they may, we suppose, be put into the record by bills of exceptions. All this is anomalous in a court of equity, but it results necessarily from the proceeding authorized, and it is not doubted that it was competent for the legislature to sanction it. All the parties in interest must be before the court, which is a principle of equity jurisprudence, and the court is to "adjudge the *right* of the case *in all respects*" and enforce its adjudication in the mode appropriate to courts of equity—that is, "by its *decree*."

In this view, the appellant did not have the absolute right, as claimed, to a trial by jury of the issue joined, as the statute (Code of 1873, ch. 163, § 8) does not, we think, apply to motions which, as in the present case, partake of the nature of an equitable proceeding to enforce a charge upon real estate. The court might perhaps, in the exercise of a sound discretion, direct an issue or issues under circumstances which would warrant such direction in a regular chancery suit; and so, if the case required it, we see no good reason why there might not be a reference to a commissioner to make inquiries and take and state accounts. Such reference might be necessary in many cases involving conflict of liens, disputed titles and like matters; such, for instance, as the case of *Iacge* v. *Bossieux*, 15 Gratt. 83. But there was no necessity for the reference asked for in the present case, as the questions litigated were simple and easy of solution by the judge, as the sequel showed, without the aid of a commissioner, nor was there any necessity for an issue or issues to be tried by a jury.

And so in the view which has been taken, the proof of the recordation of the account and statement under the statute was proper, as the lien was created or secured by such recordation. The oral testimony objected to was not offered to contradict or vary the written contract, nor did it

have that effect. It was introduced, as would appear by the bills of exceptions, merely to prove the signing of the contract by the parties and the performance of it on the part of the builders, and, of course, it was competent for that purpose.

The court did not err in admitting the assignors of the notes as defendants, on their motion. The statute requires all parties in interest to be before the court. These assignors had an interest in the subject matter of the controversy. If they were not necessary parties, they were at least proper parties. And even if it was error to admit them, the appellant has no just cause of complaint, as it could not prejudice him.

The statute (Code of 1873, ch. 115, § 3) gives the lien not only on the building, but also on " so much land therewith as shall be necessary for the convenient use and enjoyment of the premises." Complaint is made because the decree directs the sale of the house and the lot on which it was erected without first ordering an inquiry or ascertaining by evidence how much of the lot was necessary for the convenient use and enjoyment of the premises. The complainant in his written notice expressly and distinctly claimed a lien on the lot, and the appellant, neither in his answer nor in the testimony adduced, questioned the extent of the lien claimed, if it existed at all. But the thing itself speaks. It cannot be doubted, certainly in the absence of proof to the contrary, that the small lot in the town, such as is described in this case, is necessary to the convenient and reasonable enjoyment of the buildings put upon it.

The answer to the objection, that the time (20 days) given by the decree for the redemption of the property from the lien is too short, is, that this is a matter resting in the sound discretion of the court under all the circumstances, and this court will presume that the discretion has been pro-

perly exercised, where, as in this case, no objection was made in the court below, and no extension asked for of the time allowed for redemption. Tucker, J., in *Harkins* v. *Forsyth and others*, 11 Leigh, 300; Stanard, J., in *Manns* v. *Flinn's Adm'r*, 10 Leigh, 109; Green's Appendix to Wythe's Reports, 414, note 44, and cases there cited.

The decree directs the sale of the property for cash sufficient to pay the complainant's claim, the cost of the proceeding and expenses of sale, and as to the residue of the purchase money on a credit of six and twelve months for equal instalments. These terms are objected to by the appellant as unreasonable and inequitable, and we are of opinion that the objection is well founded. The complainant's claim allowed by the court, together with estimated costs and expenses, amounts to about $3,000, and it is quite probable that on the terms prescribed, the lot, with the buildings upon it, will not bring more than the amount of the claim, if so much.

Under our statute (Code of 1873, ch. 174, § 1) a court may direct the sale of property to be for cash, or on such credit and terms as it may deem best. This is substantially the same provision to be found in 1 R. Code (1819) ch. 66, § 41, and has been repeatedly construed by this court. The general rule to be deduced from the decisions is, that real property of value should be sold on a reasonable credit, unless under peculiar circumstances, and the circumstances to take the case out of the general rule should appear by the record. *Brien* v. *Pittman & Co.*, 12 Leigh, 379, 382. See also *Tennent's Heirs* v. *Pattons*, 6 Leigh, 196, 221; *Haffey's Heirs* v. *Birchetts, &c.*, 11 Leigh, 83, 90; *Kyles* v. *Tait's Adm'r*, 6 Gratt. 44, 49.

There are no circumstances apparent to withdraw this case from the operation of the general rule. It is barely possible that the cash payment may not amount to the whole of the purchase money, but in all probability it will,

and, judging of the value of the entire property from the cost of the buildings, the sale may be regarded as substantially a sale for cash. The rule has no reference to mortgages, deeds of trust, and other instruments, in which the terms of sale are agreed upon. In such cases the contract of the parties governs, and the court is left without discretion as to the terms. The sale must conform to the agreement. *Taylor* v. *Stearns and others,* 18 Gratt. 244; *Fultz* v. *Davis,* 26 Gratt. 903, 913; *Wood's Ex'or* v. *Krebbs,* 33 Gratt. 685, 694. In the present case the statute gives the lien, which must be enforced by sale according to the general rule which has been stated.

The decree of the corporation court of Danville must therefore be reversed, so far as it respects the terms of sale, and the cause remanded, with directions to order a sale of the property on a reasonable credit, except as to so much of the purchase money as may be necessary to defray the expenses of sale and pay the complainant's cost in the suit, which may be required in cash.

DECREE REVERSED.