# Wytheville.

STIMPSON v. BISHOP AND ALS.

JULY 1st, 1886.

1. TRUST DEEDS—*Debt—Discharge—Assignment.*—Mortgage secures the debt. No change in form of the evidence, or mode or time of payment; nothing short of actual payment, or express release of the debt, will discharge the mortgage. Transfer of the debt carries with it the security without assignment or delivery thereof.

2. CHANCERY PRACTICE—*Accounts and reports.*—When report, based on accounts of long standing and great confusion, is confirmed by court below, it will not be disturbed here, unless error is palpable.

3. IDEM—*Judicial sales—Modus vincit.*—In judicial sales of property embraced in deeds of trust and other instruments, where the terms of sale are agreed on, the contract governs, and the court hath no discretion as to the terms. *Pairo v. Bethel,* 75 Va. 825.

4. CASE AT BAR.—B. held trust deed on H.'s land to secure his debt. H. sold the land to S. who gave bond to B. for less than B.'s debt, which bond, B. accepted to be, *when paid,* in discharge of his debt. Title proved defective, and S. had to relieve it of an encumbrance and incur costs of suit in defence of title. B. had made no misrepresentations as to the title and no guaranty thereof. In suit by S· against B.—

HELD:

  1. The acceptance of the bond did not discharge B.'s trust deed.
  2. B. is under no liability to indemnify S. against either the encumbrance or the costs.

Appeal from decree of circuit court of Bland county, rendered at the August term thereof, 1884, in a chancery cause wherein N. B. Stimpson was complainant, and William M Bishop, Robert W. Harman, Gordon C. Thorn, and others were defendants

The original bill, filed at the July rules, 1880, alleged that in the year 1886, the plaintiff was induced by the defendant, Bishop, to leave the county of Floyd, where he then resided, to inspect, with a view to purchase, a certain tract of land on Clear Fork creek, in the county of Bland; that this land was in the vicinity of Bishop's residence, and was in the possession of one R. W. Harman, who was the owner of the equitable title, he having acquired it by exchange with one G. C. Thorn for other lands; that upon this land were the liens of two deeds of trust, dated March 23d and August 25, 1860, respectively, executed by Harman to secure to Bishop the payment of two debts, aggregating a sum exceeding $2,000.

The bill further alleged that after inspecting the land the plaintiff finally agreed with Harman to make the purchase for the sum of $2,634; that Bishop in order to effect the trade agreed with the plaintiff to accept in full payment and satisfaction of his debts secured on the land the three bonds of the plaintiff for $500 each, payable, respectively, six, twelve and eighteen months from date; and that the plaintiff accordingly paid to Harman the sum of $1,134, and executed and delivered to Bishop his three bonds, dated December 8, 1866, for five hundred dollars each, and payable as agreed upon. It also alleged that the plaintiff had wholly, or in great measure, paid off these bonds.

The bill also alleged that at the time of these transactions the plaintiff was aware that there was a controversy between Thorn and Harman as to the boundaries of the " Clear Fork land," but was not informed that the controversy extended further than to the mere question of the boundary of the land in respect to certain mountain land belonging to the tract; that several years afterwards a suit was instituted, and was then pending in the circuit court of Bland county by Thorn against Harman and the plaintiff, Stimpson, in which a rescission of

the contract of exchange between Harman and Thorn was sought, and in which Thorn further claimed that if not entitled to a rescission of the contract, he was, at least, entitled to a lien on the land puchased by Stimpson for a certain sum of money paid by him to Harman in excess of the amount justly payable by him under the contract of exchange.

It is also alleged that this controversy was well known to Bishop when the land was purchased by the plaintiff, yet that he induced the plaintiff to buy the land, and to give his bonds for the deed of trust liens, concealing from him the fact that such controversy had arisen, or was threatened, or that there was any ground therefor.

The bill also alleged that the land had been advertised for sale by the substituted trustee in the two trust deeds; that Bishop was, under the circumstances of the case, liable to the plaintiff as a vendor of the land, to the extent, at least, of the sum paid by him on account of the deeds of trust, and also for any costs to which he might be subjected in the Thorn suit. And accordingly the prayer of the bill was for an injunction to restrain the sale, and for general relief.

Bishop answered the bill, denying that the plaintiff's bonds were accepted by him in payment of his liens on the land, or that there had been any such agreement, express or implied. He did agree, the answer avers—"his debt being then under the ban of the stay-law—that if the plaintiff would pay to the respondent the sum of $1,502, in three equal instalments of $500.90 each, payable in six, twelve and eighteen months, with interest from date, he would accept the amount of the bonds, if paid promptly at maturity in satisfaction of his liens; but that respondent would never have agreed to accept a smaller sum than was due him and secured by the trust deeds, except upon the condition stated—namely, the prompt payment of the bonds at maturity, when, and in that event only, were the liens of the deeds to become extinguished."

The answer further avers that the plaintiff was fully informed both by Harman and Thorn as to the condition of the title to the land when the purchase was made; that he was fully aware that the security for the respondent's debts was in no way dependent upon the result of any controversy or adjustment between Harman and Thorn, since Harman's recognized interest in the land was more than sufficient to secure them. It also denies that the respondent "in any way procured the contract of sale between Harman and the plaintiff, or was in any way responsible therefor." It also denies that the plaintiff's bonds have been, in whole or in part, discharged; and, finally, it denies generally all the allegations of the bill not particularly answered, and calls for strict proof of the same.

The plaintiff afterwards filed two amended bills. In the first he insisted that, even if it should finally appear that Bishop's liens had not been extinguished, he ought not to be permitted to enforce the same pending the Thorn suit, as a sale of the land with such a cloud resting upon the title would result in a ruinous sacrifice of the property to the plaintiff. In the second he alleged that since the filing of the original bill the circuit court had decreed a rescission of the contract of exchange between Thorn and Harman; that on appeal the decree had been reversed, but that a decree had been finally rendered in Thorn's favor for a large sum of money which, by the decree, was charged on the "Clear Fork" land, a portion of which had been sold to pay the debt; that in defending the Thorn suit in the circuit court, and in appealing the same, the plaintiff, Stimpson, had incurred expense, which ought to be credited on any balance that might be found due by him to Bishop, since the same was incurred in defending the title to the land on which Bishop's debts had been secured, and therefore was incurred in Bishop's interest, if it should be held that he had not relinquished his liens on the land.

Bishop answered, averring that a sufficiency of the land remained unsold, after paying Thorn's lien, to satisfy his, Bishop's, debts; repeating the denial in his answer to the original bill that he was; or that he could in any way be treated as, a vendor of the land to the plaintiff, and denying that his rights were affected by the Thorn suit.

Testimony was taken, and the cause was referred to a commissioner for an account. The commissioner reported a balance due by the plaintiff to Bishop of $2,044.98, including interest, to which report both the plaintiff and defendant excepted.

The circuit court overruled the exceptions, and confirmed the report; and it was further decreed that unless within thirty days from the date of the decree the plaintiff should pay to the defendant the sum ascertained to be due and the costs of suit, then that the substituted trustee, after thirty days' advertisement, should sell the land for cash to satisfy the decree.

Thereupon the plaintiff appealed.

*David S. Pierce* and *Waller R. Staples*, for the appellant.

*Williams Bros.* and *Joseph W. Caldwell*, for the appellee.

LEWIS, P., after stating the facts, delivered the opinion of the court.

The allegation that the three bonds of the appellant were accepted in payment and discharge of the deed of trust liens on the land, is distinctly denied by Bishop in his answer, and thus the burden is on the appellant to show by clear and cogent proof that they were. This he undertakes to do by the testimony of the witnesses—G. H. Neal and R. W. Harman—besides his own.

The first witness testifies that on one occasion, in a conversation with Bishop, the latter spoke of losses he had sustained, "and mentioned this land debt;" that witness inquired if he did not have a deed of trust to secure the debt, to which Bishop replied that he had taken Stimpson's note for it, upon which there was no credit. It appears, however, that the conversation was a casual one, in the public highway, upon a subject in which the witness was in no way interested, and occurred eight or nine years before the witness testified. It would, therefore, be strange, if, after such lapse of time, the details of the conversation could be remembered by the witness with anything like strict accuracy. But, taking his language literally as it is, it amounts to little, if anything. He does not say that the debt had been paid, but that Bishop's remark was that he had taken Stimpson's note for it, which is not inconsistent with the statements in the answer, that for the debt, originally exceeding the sum of two thousand dollars, Stimpson's three bonds for five hundred dollars each had been taken, involving a loss to Bishop of nearly six hundred dollars.

The next witness, Harman, of whom the appellant purchased the land, and by whom the trust deeds had been executed, testifies that when the purchase was made, he thinks he spoke to Bishop about cancelling the deeds of trust, who said he would go to town (*i. e.*, the county seat) and attend to it; that he, witness, thought the deeds were satisfied. But when asked if he could state what the understanding between Bishop and Stimpson was in relation to the payments to be made by Stimpson on account of the deeds of trust, the witness frankly answered, that he could not; that he was not concerned about the agreement between them, and knew nothing about it.

It is obvious that the witness, knowing that the debt had been assumed by the appellant, and that Bishop looked for payment to the latter, and not to the witness, was only concerned that the records of the county should show that fact. His indebtedness to Bishop was not evidenced by writing otherwise than by the deeds of trust, which were duly recorded; and it is quite probable that Bishop informed him that he would furnish record evidence of the fact that Stimpson had assumed the payment of the debt, without intending to convey the idea that the lien itself had been extinguished. But be that as it may, the testimony of the witness is altogether too vague and indefinite to be entitled to much weight; and if construed, as the appellant contends it should be, it is at variance with the conduct of the parties, the statements in the answer, and, indeed, with the admissions of the appellant himself.

The latter, it is true, testifies, in general terms, that the bonds were accepted in full payment of the secured debts; but this statement he materially qualifies on cross-examination, by saying that *he* understood Bishop to have promised to release the deeds of trust. Yet he admits that no written evidence of such an agreement was taken or asked for; and it does not appear that prior to the institution of the present suit, fourteen years after the transactions occurred, he ever claimed the right to have the deeds released, or that he has ever made any request of Bishop to that effect.

Moreover, it appears by the depositions of two of his own witnesses, that on a certain occasion, when taking testimony in the Thorn suit, he distinctly declared that the deeds of trust had not been paid in full, but only partially; thus, in the strongest terms, admitting in effect that the lien of those deeds had not been extinguished. Now, however, he asserts the contrary; and in opposition to his present contention, are the positive denials of Bishop in his answer, repeated in his deposition, and corroborated by the circumstances of the case.

In his deposition, Bishop says that Stimpson promised to pay his bonds promptly at maturity, and that he, not being able to collect his debt of Harman by reason of the stay-law, then in force, did agree to accept the bonds for a less sum, but not to release the deeds of trust until the bonds were paid. And this version of the matter accords with the probabilities of the case. It certainly cannot be supposed, in the absence of clear proof to the contrary, that a man of ordinary prudence would accept in full satisfaction of a debt exceeding two thousand dollars, and amply secured on real estate, the bonds of a third party for fifteen hundred dollars, payable at a future day, and without any security whatever. And if such had been the agreement of the parties in the present case, is it not probable that it would have been evidenced by writing, or that the deeds of trust would have been formally released? Yet nothing of the kind was done or demanded.

It is contended, however, that the acceptance of the bonds was in itself a novation of the contract, and in effect an extinguishment of the lien to secure the original debt. But this position is clearly untenable. The facts are, that Harman owed Bishop certain debts, which were secured on Harman's equitable interest in the land purchased by the appellant, and that when the appellant bought the land he assumed, as a part of the consideration of his purchase, the payment of the Harman debt. So that Bishop, as against the appellant, occupies a position not less favorable than that of a vendor, who has not parted with the legal title, and to whom the purchase money has not been paid. Hence, the character of the debt was not changed by the acceptance of the appellant's bonds. The *debt* remained the same, and the bonds were merely evidence of the debt, reduced as agreed upon. For in such cases a court of equity, regarding the substance, and not the form of things, considers the debt, and the lien, which is but an inci-

dent of the debt, as still subsisting, unless the proof is clear and convincing, that the parties otherwise intended.

These principles are well settled and familiar. In 2 Jones on Mortgages, sec. 924, the rule is thus stated : "A mortgage secures a debt, and not the note, or bond, or other evidence of it. No change in the form of the evidence, or the mode or time of payment—nothing short of *actual payment of the debt,* or an express release—will operate to discharge the mortgage. The mortgage remains a lien until the debt it was given to secure is satisfied, and is not affected by a change of the note, or by giving a different instrument as evidence of the debt, or by a judgment at law on the note merging the original evidence of indebtedness, or by a recognizance of record taken in lieu of the mortgage note."

The same principle has been repeatedly recognized by this court. In *Hanna* v. *Wilson,* 3 Gratt. 232, it was held in respect to a vendor's lien, that though proceedings on the note given for the purchase money might be barred at law by the statute of limitations, yet that the right to enforce the lien in equity was not affected by any lapse of time short of the time sufficient to raise the presumption of payment.

So in *Knisely* v. *Williams,* 3 Gratt. 253, the right of the vendor to enforce his lien on the land for the purchase money was held not to have been waived by his acceptance of an order on a third person and the surrender of the vendee's bond in consideration of the order, which was not paid.

In *Yancey* v. *Mauck,* 15 Gratt. 300, the vendor retained the title, and took the vendee's bonds for the purchase money. Before the bonds fell due, the vendee, with the vendor as surety, executed his bond for the amount of the purchase money, payable to a creditor of the vendor for a debt due by the latter, whereupon the vendee's bonds were delivered up and cancelled. The vendor having been compelled to pay the bond on which

he was surety, filed his bill to subject the land to the payment of the purchase money. The circuit court dismissed the bill, but on appeal to this court the decree was reversed. It was held that the character of the debt was not affected by the arrangement between the parties, and that the land was chargeable in equity for the unpaid purchase money.

A court of equity, said the court, looks to substance, not to form, it looks to the *debt* which is to be paid, not to the *hand* which may happen to hold it, and it considers a debt as never discharged until it is discharged by payment to the proper person, and by the proper person.

The same principle was again asserted in an able and elaborate opinion in the case of *Coles* v. *Withers*, 33 Gratt. 186. There the vendor took the vendee's bonds, and reserved an express lien on the face of the conveyance. Afterwards the vendee executed to the vendor another bond with sureties, and thereupon the first bond was surrendered. The vendee devised the land, and the devisee and her husband conveyed the same to a purchaser for valuable consideration. The husband afterwards executed his bond to the vendor for a balance due on the second bond, upon which he confessed. judgment, and the second bond was delivered to him.

In a suit by the vendor to subject the land to the payment of the purchase money, the main defence was that the execution of the husband's bond, and confession of judgment thereon, was intended as a satisfaction of the vendor's lien. But this court held otherwise, holding that the debt remained the same, notwithstanding the change of securities and confession of judgment, and decreed accordingly.

In the course of the opinion, speaking of the lien of the vendor and the lien by mortgage, it was said: "These securities should not be confounded with mere personal securities or obligations for the payment of money of any class or grade whatever.

A bond, promissory note, or simple contract, for the payment of money in any shape or form, is a personal contract, which surely cannot, at law or in equity, be assimilated to, or governed by, the principles applicable to a mortgage of any description." See also *Summers* v. *Darne*, 31 Gratt. 791, 806; *Frazier* v. *Hendren*, 80 Va. 265.

In the light of these decisions, which are in harmony with the authorities elsewhere, it is very clear, upon the facts of the case already adverted to, that the circuit court did not err in holding that the liens of the deeds of trust have not been waived.

It has been argued that the effect of the decree complained of, is to give to Bishop the undue advantage of holding on to the bonds, and enforcing them against the appellant in the event of the failure of the title to the land, and, at the same time, to hold the liens freed from any of the liabilities of a vendor, or expenses in defending the title. But to this it has been well answered, that such is the effect of the voluntary contract into which the appellant entered when he bought the land. In other words, he agreed to take the land, and to give his own obligations for the debt due by Harman, and for the consequences of his own act he has no just ground of complaint.

In the petition for appeal it is claimed that the appellant *purchased* the debts, and that he thus became entitled to the liens to secure them, which were merged and destroyed when he bought the land or the equity of redemption.

It is undoubtedly true that a transfer of a secured debt carries with it the security without formal assignment or delivery. *Carpenter* v. *Longan*, 16 Wall. 271; *McClintic* v. *Wise's Adm'rs*, 25 Gratt. 448; 3 Pom. Eq., sec. 1210. This is not disputed. But the answer to the position that the debts were purchased is two-fold—namely: first, that no such case is made

in the original or amended bills; and, secondly, that there is no proof in the record to support it. Indeed, the appellant in his own deposition, uses this language: "I only claimed a release of the land, and no claim on the deed of trust, or that I bought the deed"—meaning, of course, the debts secured by the deeds.

The next point made by the appellant is, that if the liens of the deeds of trust have not been extinguished, then that Bishop ought to be compelled to pay a fair proportion of the lien decreed, and the costs and expenses incurred in the Thorn suit.

The alleged ground of this contention is, that it was owing to the misrepresentations and active efforts of Bishop that the appellant was induced to buy the land, and, moreover, that the suit involved the title to the land which constituted the sole security for Bishop's debts.

The charge vaguely made in the bill that Bishop was guilty of misrepresentations or concealment as to the condition of the title, or that he gave any assurances respecting it, is denied in the answer, and a careful examination of the record fails to disclose a particle of proof to support it. The appellant, though twice examined as a witness in his own behalf, makes no allusion to the charge in either of his depositions; while, on the other hand, the averment in the answer that he was "fully advised as to the condition of the title, when he bought the land, both by Harman and Thorn," is borne out by the evidence.

It appears from the record that the land had been acquired by Harman from Thorn in 1858, in exchange for other lands, and that afterwards a controversy arose between them as to its true boundaries; Thorn claiming that under their contract, Harman was to take at an estimated value, a quantity of mountain land with the tract, which Harman denied. Moreover,

Thorn claimed that through mistake as to the quantity of land he acquired from Harman, he had paid a larger sum of money to the latter, on account of the exchange, than by his contract he was bound to pay. To settle this controversy was the object of the Thorn suit, which was instituted after the appellant's purchase, and in which Thorn claimed that if not entitled to a rescission of the contract of exchange, he was, at least, entitled to a charge on the "Clear Fork" land for the excess he had paid as aforesaid.

The circuit court decreed a rescission of the contract, but on appeal to this court, the decree was reversed. The case is reported under the style of *Stimpson* v. *Thorn,* 25 Gratt. 278. The suit, however, after it was remanded to the lower court, resulted in a decree in Thorn's favor for several hundred dollars, for the satisfaction of which a portion of the "Clear Fork" land, in the appellant's possession, was sold.

The appellant now contends, for the reasons already stated, that Bishop is justly chargeable with a fair proportion of the sums of money, including expenses and costs, which the appellant has been compelled to pay in the Thorn litigation; but the claim was rejected by the decree complained of.

The appellant admits in the bill that when he bought the land he was aware of a controversy between Thorn and Harman as to the boundary of the land, but did not know, he says, of any claim on Thorn's part to a charge on the land for excess of payments.

It is clear, however, from the evidence, apart from the averments in the answer, that he knew enough of the controversy to make it incumbent upon him to inquire as to the condition of the title, and that he could have easily informed himself fully in respect to it. Indeed, Thorn testifies that immediately after the appellant's purchase he informed him that Harman had not complied with his contract, and that he, Thorn, would

not convey the legal title to the land until the contract had been complied with. And it is fairly inferable from the deposition of the witness that he explained his equities to the appellant at the same time. At all events, it does not appear that Bishop knew more of the matter than the appellant did; or, if he did, that anything was concealed or misrepresented by him. Manifestly the pretension that he misled the appellant, or in any way guaranteed the title, is an after-thought. For, if he had agreed to guarantee the title, it is strange that no written evidence of the fact was taken, and stranger still that he was not asked to unite in defending the Thorn suit.

Nor is it true that, if the contract of exchange had been rescinded in that suit, the sole security for Bishop's debts would have been lost. It appears that the first deed of trust was executed to indemnify Bishop as surety in a certain forthcoming bond taken in an action wherein judgment had been recovered against Harman by an assignee of one Dunbar, the vendor of the Kimberling land, which was the land acquired by Thorn in the exchange with Harman. And on the principle of subrogation, Bishop would have been entitled to enforce the lien of that judgment on Harman's interest in the Kimberling land. It also appears that there was a judgment for the debt secured by the second deed, which bound Harman's interest in the same land. So that it may be fairly inferred from the record that Bishop's security was ample, independently of the result of the Thorn suit. Moreover, as already said, he was not a party to the suit, was not even invited to defend it, and on no just ground can he be compelled to share the burden of defending it.

The next question is as to the exceptions to the commissioner's report. Both plaintiff and defendant excepted to the report, but the exceptions were overruled.

The testimony is voluminous, and shows that the accounts between the parties, which have been running over a period of many years, are in great confusion. The cause was referred to a special commissioner, who, after laborious investigation with the parties and witnesses before him, settled the accounts as best he could, and his report was confirmed. In such a case, the appellate court ought not to disturb the action of the commissioner and of the lower court, unless there be palpable error, and none such appears in this case. *Stuart, Palmer & Co.* v. *Hendricks,* 80 Va. 601.

Lastly, it was not error to direct a sale for cash. Such were the terms prescribed by each of the trust deeds, and the circuit court properly adopted the terms agreed upon by the parties themselves. It would have been error to have done otherwise. *Wood's Ex'or* v. *Krebbs,* 33 Gratt. 685; *Pairo* v. *Bethel,* 75 Va. 825. When the creditor took the appellant's bonds for the debts on a credit, his right to enforce the deeds was impliedly suspended until the bonds respectively fell due. The arrangement had no other effect, so far as the enforcement of the deeds was concerned.

Upon the whole case, we are of opinion to affirm the decree.

RICHARDSON, J., and HINTON, J., dissented.

DECREE AFFIRMED.