CLEVELAND TRUST COMPANY *et al., Trustees, v.* CAPITOL THEATER COMPANY *et al.*

(No. 8114)

Submitted November 19, 1935. Decided January 14, 1936.

2

*Charles McCamic, Austin V. Wood* and *Ulmer, Berne & Gordon,* for appellants.

*G. Alan Garden, Howard D. Matthews, Lester C. Hess,* and *Nesbitt & Nesbitt,* for appellees.

MAXWELL, JUDGE:

This is an appeal from two decrees of the circuit court of Ohio County, the first, November 26, 1934, directing immediate sale of the real estate involved, and the second, July 27, 1935, refusing to terminate the existing tenancy pending sale. The suit is based on a deed of trust. The trustees appeal.

In their bill of complaint, the trustees pray for a receivership, sale of the property and general relief, but they take the position that it would be for the best interest of the lien creditors (bondholders) that the property be not immediately sold, as required by the court. They also urge that, pending sale, the present tenant should be ousted and effort made to secure another one.

The initial question is jurisdictional. Inasmuch as the deed of trust clothed the trustees with full power of control and sale of the property after default, may they invoke the aid of a court of equity? Such course may not be taken by a trustee under a simple deed of trust. *Hite* v. *Donnally,* 85 W. Va. 640, 643, 102 S. E. 478; *George* v. *Zinn,* 57 W. Va. 15, 49 S. E. 904, 110 Am. St. Rep. 721. In such instances, it would be an imposition on the courts to call on them to do for parties that which they have full authority to do for themselves. Courts do not exist as mere conveniences. The underlying reason for their existence is that they may take charge of and settle controversial matters which the parties inter-

ested cannot settle for themselves. But the instrument at bar is by no means a simple deed of trust. It is involved and complex.

The familiar procedural differences attendant upon the enforcement of mortgages and deeds of trust need not here be elaborated. It suffices to note that as to mortgages, equity jurisdiction is primary and essential; as to deeds of trust, it is incidental merely. If a deed of trust is simple and uncomplicated, incidental equitable jurisdiction does not arise, because there is no necessity for it. But if there are involvements in the trust, the situation is different. If it be practicable and advisable to call forth the power of the chancellor, such may be done, as the contractual or statutory method of foreclosure is not exclusive. I Quindry on Bonds and Bondholders, sec. 217; II Jones on Mortgages (7th Ed.), sec. 1217a; *Granite Hall Farms Corp.* v. *Trust Co.*, 154 Va. 341, 153 S. E. 843; *Clark* v. *Jones*, 93 Tenn. 639, 27 S. W. 1009, 42 Am. St. Rep. 931; *Crecelius* v. *Home Heights Co.*, (Mo. Sup.) 217 S. W. 508; *Jackson* v. *Prestwood*, 211 Ala. 585, 101 So. 185; *Old Colony Trust Co.* v. *Great White Spirit Co.*, 178 Mass. 92, 59 N. E. 673. We are of opinion that in this case the complications, more evident hereinafter, warranted the trustees in seeking the aid of equity.

The plaintiffs are the Cleveland Trust Company and Rudolf A. Malm, substituted trustees under a deed of trust executed by Capitol Theater Company July 1, 1927, to secure bonds of $600,000.00. The property involved is a large theater building (the Capitol Theater) in the city of Wheeling, West Virginia. January 1, 1934, bonds in the sum of $480,000.00 were outstanding. There was default in the interest due that date. On January 15, 1934, on request of fifteen per centum in amount of the bonds then outstanding, the trustees, acting under the acceleration clause of the trust, declared the entire debt due. This suit was immediately instituted. The original defendants are Capitol Theater Company, Wright Hugus and Albert W. Laas, trustees under a second deed of

4

trust, and Capitol Enterprises, Inc. The latter is the tenant of the property, having, with court approval, continued in possession under the special receivers who were appointed March 2, 1934. On the 13th of July, 1934, Lee C. Paull, Kent B. Hall, William E. Stone and Morris W. Klein, on their formal petition, were made parties defendant to the cause. They alleged ownership severally of the aggregate of $78,200.00 in bonds. They moved for a decree of foreclosure and sale as prayed for in the original bill filed by the Cleveland Trust Company and Malm, trustees. This was resisted by the plaintiffs.

Of the $480,000.00 bonds outstanding, $320,000.00 are represented by a bondholders' committee, about $78,000.00 by Paull and his associates, and approximately $80,000.00 are unrepresented. The learned circuit judge very pertinently refers to the situation as "a dispute between two groups of bondholders as to the method of procedure."

Following the interposition of Paull and associates, the plaintiffs filed two supplemental bills. There were demurrers and answers. The plaintiffs charge Paull and associates with bad faith; that there is a conspiracy between them and Warner Brothers, Pictures, Inc., a motion picture producing concern, and Capitol Enterprises, Inc., tenant of the Capitol Theater, to depress the value of the Capitol Theater so that ownership thereof may be obtained at far less than the real worth. Paull and the others (Warner Brothers Pictures, Inc., is not a party to the suit) deny any such efforts or intent, and, on the other hand, Paull, Hall, Stone and Klein allege that the trustees are improperly seeking delay in the sale of the theater to the end that they may enhance the interests of the particular group of bondholders represented by the bondholders' committee; that the Cleveland Trust Company is disqualified from acting as trustee because of its personal interest, in that it is the depositary for the said committee. These allegations are denied by the trustees. Incidental to the main controversy, in respect of the time and manner of sale, is the question of tenancy and occupancy of the property pending sale. The trial chancellor

acquitted the intervenors of the fraud charged against them. We concur. As to the Cleveland Trust Company, we are unable to perceive that it has any financial interest which may run counter to its duties as an impartial trustee. Nor is it evident that the trustees have thus far violated the letter or the spirit of the instrument from which they derive their authority.

We thus come to the question whether the trustees, having voluntarily come into equity, may invoke the provisions of the deed of trust and the discretionary powers thereby vested in the trustees, or whether, in such status, they must submit to the sound discretion of the chancellor, irrespective of provisions of the trust. The trial court seems to have adopted the latter view, and therein, we think, there was error.

While it is true that in directing sale under a deed of trust or mortgage, the court does not acquire its authority from the instrument, and judicial discretion may be exercised (*McLarty* v. *Urquhart,* 153 N. C. 339, 69 S. E. 245), nevertheless, where the lien is first in priority, the contract may not be in large measure or entirely ignored.

In equity, when real estate is subjected to sale under the lien of a mortgage or deed of trust, the court should employ the terms of sale prescribed by the instrument. *Stafford v. Jones,* 65 W. Va. 567, 64 S. E. 723; *Pairo* v. *Bethell,* 75 Va. 825; *Stimpson* v. *Bishop,* 82 Va. 190; *Hogan* v. *Duke,* 20 Gratt. (61 Va.) 244; *Abney-Barnes Co.* v. *Coal Co.,* 83 W. Va. 292, 98 S. E. 298; *Watterson* v. *Miller,* 42 W. Va. 108, 24 S. E. 578, 579. In the *Abney-Barnes* case, a judgment creditor's suit, there is this pertinent statement at page 302 of 83 W. Va.: "But the trustee or mortgagee can obtain in such suit the enforcement of his mortgage according to its terms, if his trust deed is prior to the judgment liens, and if not, its proper order or priority will be determined. A mortgagee does not lose any substantive rights by being compelled to enforce his trust lien in a pending suit, and the time and terms of the sale will be determined by the provisions of the trust deed, not by the rules applicable to the enforcement of

judgment creditors' liens." In the Watterson case, which involved a sale in chancery under a deed of trust, the court said that it was "in effect but a sale under the deed of trust." Thus is the proposition stated in Rorer on Judicial Sales (2nd Ed.), section 177: "In decreeing sales of realty on trust deed, the proper practice is to order the sale to be made on the terms provided in the deed. Not merely by reference thereto, but by specifying the same in the decree. The object of judicial intervention is to enforce the trust, upon the term thereof, and not to change the same. If, from any cause, it becomes impracticable for the trustee to carry out the trust, or he refused to do so, a court of equity may enforce it, but are as much bound to conform to the tenor of the deed as the trustee himself would be." Courts of equity are not vested with unlimited authority to disturb rights of contract involved in litigation. *Merchants' Loan & Trust Co.* v. *Chicago Rys. Co.*, (C. C. A.) 158 Fed. 923. In the absence of fraud or some other defined ground warranting equity interference, the contract rights of parties litigant should be effectuated. *Graf* v. *Hope Bldg. Corp.*, 254 N. Y. 1, 171 N. E. 884, 70 A. L. R. 984. Of like import: *Colonial Trust Co.* v. *Central Trust Co.*, 243 Pa. 268, 90 A. 189. Under the principles thus emphasized, it seems clear that in a situation such as at bar, regard should be given not only to the terms of sale stipulated in the trust, but as well to other pertinent provisions thereof.

Among provisions of the trust are stipulations that upon default by the debtor, the trustees may, on request in writing by holders of fifteen per centum of the unpaid bonds, declare the entire indebtedness due; that the trustees may thereupon enter upon the property and operate, manage and control the same pending final disposition thereof; that they may proceed to a sale of the property either under the powers of the trust or by appropriate judicial proceedings; that they may move for a receivership of the property; that holders of bonds or coupons shall not have the right "to institute any suit,

action or proceeding in equity or at law for the foreclosure of this Trust Deed or for the execution of any trust hereof or for the appointment of a receiver hereunder, or for any other remedy hereunder, unless the holders of at least ten per cent (10%) in amount of the bonds outstanding shall have given to the Trustee written notice of some event of default and the continuance thereof; nor unless the holders of fifteen per cent (15%) in principal amount of the bonds then outstanding shall have requested the Trustee in writing to take action in respect of the matter complained of, and shall have afforded to them a reasonable opportunity either to proceed to exercise the powers hereinbefore granted, or to institute such action, suit or proceedings in their own names;" and, further, that "no one or more holders of bonds or coupons shall have any right in any manner whatever to affect, disturb or prejudice the lien of this Trust Deed by his or their action, or to enforce any right hereunder, except in the manner herein provided, and that all proceedings hereunder, at law or in equity, shall be instituted, had and maintained in the manner herein provided and for the equal benefit of all holders of such outstanding bonds and coupons."

As noted, this suit was instituted by the trustees upon their declaration of default by the debtor following notice to the trustees by the owners of fifteen per centum of amount of the outstanding bonded indebtedness. The provisions of the trust vest the trustees with broad and comprehensive authority. The above quoted provisions of the instrument indicate the pains exerted in the preparation of the trust to prevent interference with the trustees by minority bondholders. All purchasers of the bonds bought in the light of those emphatic stipulations. By becoming purchasers, they voluntarily subscribed to the terms of the instrument. In the absence of fraud or other misconduct on their part, the trustees are entitled to proceed in reasonable compliance with the terms of the trust. They may not act arbitrarily in the exercise of their discretion. Their conduct will, of course, be under the constant supervision of the circuit court to the

end that the spirit of the contract may be given effect. Request for reasonable delay in making sale is within the province of the trustees, but extended delay would be unreasonable and would not be countenanced in equity. The decree of November 26, 1934, directing immediate sale is therefore reversed.

By the decree of July 27, 1935, the chancellor not only declined to vacate the tenancy of the Capitol Enterprises, Inc., the present occupant of the theater, but, as well, acquitted of conspiracy those charged with the same. On the ground of no conspiracy, the chancellor was warranted in his refusal to terminate the tenancy. But the fact of the part ownership of the stock of Capitol Enterprises, Inc., by Warner Brothers Pictures, Inc., was sufficient basis for the effort of the trustees to terminate the said tenancy. The reason for this is that it appears from the record that opportunity for advantageous lease or sale will probably be prejudicially affected by the interest of a large producing company in the tenant enjoying the present occupancy of the theater. We are therefore of opinion that the motion of the trustees to terminate the said tenancy should be sustained.

The question of the right of the trustees to demand credit of bonded indebtedness against their bid, if the property should be knocked off to them at public sale, arises in the case. It was presented first in a motion of the trustees with respect to the decree of sale, which motion the court overruled, and that action was assigned as a point of error. A later petition of the trustees more formally presenting this matter was not passed on by the chancellor. Inasmuch as the decree of sale will be reversed, we are of opinion that this question should be held open for determination by the chancellor on the said petition or other proper presentation.

For the reasons stated we reverse the decrees of November 26, 1934, and July 27, 1935, and remand the cause for further proceedings.

*Reversed and remanded.*