UNION GUARDIAN TRUST CO. *v.* BUILDING SECURITIES
CORP.

1. TRUSTS—TRUSTEE AS PURCHASER AT MORTGAGE FORECLOSURE SALE
—CONTRACTUAL RIGHTS AND LIABILITIES NOT IMPLIED.

In suit involving right of trustee to purchase property upon fore-
closure of trust mortgage, the contractual rights and liabilities
of the parties cannot be implied but must be found in the trust
indenture (3 Comp. Laws 1929, §§ 13281, 13282, 13309).

2. SAME—WORDS AND PHRASES—"BUT."

In clause of a trust deed stating trustee was not under obligation
to recognize anyone as a bondholder thereunder or to do or re-
frain from doing any act at such person's request without his
deposit of bonds with trustee *but* permitting trustee to exercise
powers and enforce rights of action thereunder without posses-
sion or production of said bonds or coupons, the use of the
word *but* in such manner is *held*, to indicate intention to limit
or restrain sense or effect of that which had before been said.

3. MORTGAGES—CONSTRUCTION—TRUST MORTGAGES.

The language of a mortgage is to be construed most favorably
for the mortgagee, although in connection with trust mort-
gages the court is mindful of superabundance of words reliev-
ing trustees from all acts excepting their own wilful defaults.

4. SAME—CONSTRUCTION.

Rules of construction of mortgages do not require adherence to
literal terms in derogation of the interior sense of the transac-
tion.

5. EQUITY—SUBSTANCE RATHER THAN FORM.

Equity regards substance rather than form, and asserts and en-
forces the end actually aimed at, if lawful and just.

6. TRUSTS—INTERPRETATION AND ENFORCEMENT.

Trust deed on premises located in Michigan and under which
trustee is a Michigan corporation, is to be interpreted by and
enforced under the laws of Michigan rather than State in
which such instruments are in general use.

7. Mortgages—Covenants Contrary to Settled Policy of State.
   Contracting parties to mortgages have power to agree upon covenants which are contrary to traditional practice and a court of equity may specifically enforce such engagements but such power must be clearly given by the engagement of the parties and exercised with a full recognition of the settled policy of the State.

8. Trusts—Rights of Bondholders—Impairment of Contract.
   Bondholders are entitled to receive what their contract provided for, and may not be compelled to take in lieu thereof beneficial interest in trust uncertain as to time and outcome not contemplated by indenture.

9. Same—Construction of Trust Instruments—Intent.
   The intent of the parties at the time the trust agreement was made, as gathered from the entire instrument, controls, despite literal terms in derogation of the interior sense of the transaction.

10. Same—Trustee's Powers—Courts.
    Powers granted to trustee in a deed of trust are not liberally construed and their exercise must be consonant with terms of that instrument and found therein as, where such an instrument is carefully drawn, it may safely be presumed that none of the parties intended something else should govern trustee and court does not have the power to import additional provisions.

11. Same—Mortgages—Purchase by Trustee at Foreclosure Sale Without Bonds, Coupons or Cash—Statutes.
    In equity proceedings to foreclose trust mortgage, where controlling statute does not authorize trustee to purchase mortgaged premises at foreclosure sale without having in its possession, or presenting to circuit court commissioner conducting said sale, any bonds or coupons, and trust deed contains specific provisions, permitting trustee to purchase at such sale and permitting any purchaser to use bonds, matured but unpaid coupons, and cash, decree of foreclosure authorizing trustee to make purchase at sale without presenting either bonds, coupons or cash *held*, unauthorized, notwithstanding other provisions of trust deed permitting trustee, without possession or production of bonds or coupons, to foreclose, collect insurance, complete building on default of mortgagor, etc., there being evidenced no intention to permit trustee to claim representation for nondepositing bondholders and by a purchase under such assump-

tion, compel all bondholders to become tenants in common under direction and guidance of trustee for a time not limited by the instrument or to be made compulsory beneficiaries under a trust thus established (3 Comp. Laws 1929, §§ 13281, 13282, 13309, 14364–14380, Act No. 111, Pub. Acts 1931; Act No. 210, Pub. Acts 1933).

12. MORTGAGES—EQUITY FORECLOSURE—TIME FOR SALE—DISCRETION OF JUDGE—STATUTES.

Question of when mortgage foreclosure sale is to be made under a foreclosure in equity is within the sound discretion of the trial judge subject to limitation that decree shall not order lands to be sold within six months after filing of bill to foreclose (3 Comp. Laws 1929, § 14365).

13. APPEAL AND ERROR—QUESTIONS REVIEWABLE—DISCRETION OF COURT—TIME FOR HOLDING SALE UNDER EQUITY FORECLOSURE.

Decree of foreclosure stating sale could be held at any time after a given date is approved where no record is made as to facts bearing upon time for holding sale which parties believed might have appealed to the discretion of the trial judge (3 Comp. Laws 1929, § 14365).

WIEST, J., dissenting.

Appeal from Wayne; Marschner (Adolph F.), J. Submitted October 21, 1936. (Docket No. 93, Calendar No. 38,892.) Decided May 21, 1937. Rehearing applied for.

Bill by Union Guardian Trust Company, a Michigan corporation, as trustee under a deed of trust, against Building Securities Corporation and 8162 Jefferson East Corporation, Michigan corporations, to foreclose a trust mortgage. Decree for plaintiff. Defendants appeal. Reversed and remanded.

*Milburn & Semmes* (*Edward T. Goodrich,* of counsel), for plaintiff.

*Munro, Powell, Smilay & Covey* (*Slyfield, Hartman, Mercer & Reitz,* of counsel), for defendants.

Bushnell, J.    The decree of the trial court in this foreclosure of a trust mortgage permits the trustee, if it becomes the purchaser at the foreclosure sale, to bid in the mortgaged premises without paying cash or depositing mortgage bonds.  The decree states:

"If said trustee, or any successor in trust, shall be the purchaser at said sale, it shall not be required to have in its possession or to present to the circuit court commissioner conducting said sale any bonds and coupons, nor shall it be required to pay any sum in cash except the costs and expenses of said sale, and the remaining purchase price may be paid by crediting the balance of such purchase price on the indebtedness herein decreed to be due in the same amounts and with the same priorities as though the balance of such purchase price had been paid in cash by a third party and such cash paid to said trustee pursuant to the provisions hereof."

Appellants claim that the court was in error in this particular.

It is also claimed that the court erred in failing to limit the time within which the mortgaged premises may be sold.  The decree states:

"It is hereby further ordered, adjudged and decreed that the defendants, or either of them, pay, or cause to be paid, to the plaintiff, or to its attorneys, on or before the 15th day of December, 1935, the sums so mentioned aforesaid and decreed to be due to the plaintiff, with interest thereon at the rate of 7 per centum per annum from the date of this decree, and the costs of the plaintiff in this suit to be taxed according to law; and that in default thereof all and singular the mortgaged premises and property mentioned in the bill of complaint in this cause and hereinafter described be sold at public auction by or under the direction of a circuit court commissioner

of this county, at any time after the 15th day of December, 1935.''

The contractual rights and liabilities of the parties cannot be implied; they must be found in the trust indenture. See 3 Comp. Laws 1929, §§ 13281, 13282 and 13309.

Article 9 of the trust instrument has to do with foreclosure, sale and distribution. Section 5 thereof reads in part:

''At any such sale any bondholders or coupon holders or any committee or trustee appointed by them or a part of them, or the trustee or any successor in trust herein named may bid for and purchase said mortgaged premises or any part thereof. The purchaser at any such sale shall be entitled in making settlement or payment for the property purchased, to use and apply any bonds and any matured and unpaid coupons hereby secured, by presenting such bonds and/or coupons in order that there may be credited thereon the sum apportionable and applicable to the payment thereof, out of the net proceeds of such sale; and thereupon such purchaser shall be credited on account of such purchase price payable by him, with the sum apportionable and applicable out of such net proceeds to the payment of the bonds and coupons so presented; provided, however, that in all cases the purchaser or purchasers shall pay in money a sufficient sum to cover the items referred to in subparagraphs (a) and (b) of section 4 of this article.''

The last mentioned subparagraphs have to do with costs and expenses, etc.

Appellee says:

''The power of the trustee to purchase the property for the benefit of all bondholders and to make payment of its bid by applying the amount due on the mortgage indebtedness is contained in section 5

of article 9 and in the second sentence of section 2 of article 10, when this section and this sentence are read together and construed in the light of the entire mortgage.''

In order to read the second sentence of section 2 of article 10 in its own setting, we quote all of sections 1 and 2 and a portion of section 3, italicizing the language relied upon by the trustee:

''Liabilities, duties, powers and rights of the trustee.

''SECTION 1. The recitals contained herein and in the bonds issued hereunder shall be understood as made solely by the grantor and not as made or vouched for by the trustee. The trustee shall have no responsibility for the validity of the lien of this indenture or the execution or acknowledgment thereof, nor as to the title, value or extent of the security afforded hereby, and shall be under no obligation to see to the recording, registration, filing or refiling of this instrument, or any instrument of further assurance, or to the giving of any notice thereof, or to see that any of the property intended now or thereafter to be conveyed in trust hereunder is subjected to the lien hereof or to see to the use or application of the bonds or their proceeds.

''SEC. 2. The trustee shall not be under any obligation to recognize any person, firm or corporation as the holder or owner of any of the bonds secured hereby, or to do or refrain from doing any act pursuant to the request of any person, firm or corporation, professing to be or claiming to be such holder or owner, until such supposed holder or owner shall produce the said bonds and deposit the same with the trustee in the respective cases and instances herein required and specified. *But all powers and rights of action hereunder may be exercised and enforced at all times by the trustee, at its election, without the*

*possession or production of any of said bonds or coupons, or proof of ownership thereof at any time whatsoever.* The trustee shall not be answerable for the default or misconduct of any agent or attorney employed by it in and about the execution of this trust if such agent or attorney shall have been selected with reasonable care. The trustee shall not be personally liable for any debts contracted by it nor for damages to persons or property incurred by it nor for damages to persons or property of any kind whatsoever, or for salaries or nonfulfillment of contracts during any period wherein it shall manage the trust estate or premises upon entry, but all of the same shall be a charge upon the trust estate.

"Sec. 3. The trustee shall not be in any way liable for the consequence of any breach of the covenants herein contained, or for any act done or anything omitted hereunder by the grantor, and in no event shall the trustee be liable to any bondholder, except for gross negligence or wilful misconduct or neglect. It shall be no part of the duty of the trustee to effect or collect insurance against fire or other damage on any portion of said premises," etc.

It is not contended by appellee that the mortgage foreclosure statutes (3 Comp. Laws 1929, §§ 14364–14380), as amended, contain any language authorizing the trustee to purchase the mortgaged premises at the foreclosure sale, without having in its possession or presenting "to the circuit court commissioner conducting said sale any bonds and coupons."

Appellee suggests that the answer to the following question is decisive:

"Is the plaintiff trustee authorized by the trust deed and the bonds to bid for and purchase the mortgaged property for and on behalf of all of the bondholders, and to make payment of its bid (except for costs and expenses of sale) by applying all or any part of the mortgage debt in payment of its bid with-

out having in its possession any of the bonds, and to thereby satisfy the debt evidenced by the bonds to the extent of the trustee's bid without credit therefor being actually indorsed upon the bonds?''

In answer thereto appellants say:

''Defendants contend that even if the trust mortgage contains the express power authorizing the plaintiff trustee to bid for and purchase the mortgaged properties without the use of bonds (which defendants do not admit), the lower court had no right or jurisdiction to enforce such power in the present equity foreclosure proceedings.

''To clarify defendants' contentions, defendants suggest the further question:

''In this statutory foreclosure proceeding, did the lower court have either the right, power or jurisdiction to enter the decree in this case authorizing the plaintiff trustee to bid for and purchase the mortgaged premises without cash or bonds, even though express power so to do was conferred upon the trustee in the trust mortgage?''

None of the meticulous details of article 9, § 5 suggests that the parties presumed that the trustee, if the purchaser, would use any token of payment other than cash or bonds, etc.  On the contrary, the intent of the parties is indicated by the following language of this section:

''The purchaser at any such sale shall be entitled in making settlement or payment for the property purchased, to use and apply any bonds and any matured and unpaid coupons hereby secured, by presenting such bonds and/or coupons in order that there may be credited thereon the sum apportionable and applicable to the payment thereof, out of the net proceeds of such sale,'' etc.

Had the parties intended that the purchase would be made ''without the possession or production of

any of said bonds or coupons, or proof of ownership thereof,'' the natural place to state such intention would be in article 9, § 5.

The language of section 2 of article 10, which the trustee now claims gives it power to purchase the mortgaged premises, at the foreclosure sale, merely by the execution and delivery of a receipt for the mortgage indebtedness, is italicized in our quotation of this section. It is to be noted that the statement is preceded by the word "but," thereby connecting the thought contained therein with that which immediately precedes. This section 2 of article 10 requires all parties other than the trustee to produce and deposit their bonds before it shall be incumbent upon the trustee to do or refrain from doing any act in their behalf. However, the trustee may act under the trust deed without being required to prove its authority to act for the bondholders. The word "but," as used in this manner, "is an appropriate term to indicate the intention of those who use it to limit or restrain the sense or effect of something which had before been said, or to indicate a proviso, condition, qualification, or exception." 9 C. J. p. 1106.

The word "but," so used, is a conjunction "expressing opposition, contradiction, antithesis, exception, discrepancy, limitation, condition." Webster's New International Dictionary (2d Ed.).

We are mindful that the language of a mortgage is to be construed most favorably for the mortgagee (*Stuart* v. *Worden,* 42 Mich. 154), but we are also mindful of the superabundance of words in trust mortgages which, in part at least, arise out of the desire of scriveners to relieve trustees from all acts excepting their own wilful defaults.

The language of this instrument is illustrative:

"The trustee shall not be liable for any error of judgment nor for any act done or step taken or omitted nor for any mistakes of fact or law, nor for anything which it may do or refrain from doing in good faith, nor generally, shall it have any accountability hereunder except for its own wilful default."

We apprehend that neither party contemplated that the sentence which begins with the conjunction "but" would be lifted from the context of its paragraph and read into another article which provides for the terms of purchase, and by such transfusion or grafting process, give added vigor to the carefully chosen language of section 5. Standing alone, the language of section 5 does not provide for purchase by the trustee in the manner permitted by the decree. The rules of construction of mortgages do not require adherence "to literal terms in derogation of the interior sense of the transaction. Equity regards substance rather than form, and asserts and enforces the end actually aimed at, if lawful and just." *Stuart* v. *Worden, supra.*

This appeal in equity is a trial *de novo* and in order to determine the matter, it is necessary to examine the applicable authorities and statutes, and the record. The record in the appeal before us consists only of the pleadings, orders, decree and the trust deed.

This "trust deed," in form, is a stranger to Michigan. It was suggested on oral argument that it was in general use in Illinois and we are urged by appellee to apply the interpretation given to similar instruments as found in *Kitchen Bros. Hotel Co.* v. *Omaha Safe Deposit Co.,* 126 Neb. 744 (254 N. W. 507), and *Straus* v. *Chicago Title & Trust Co.,* 273 Ill. App. 63. Appellants say the case last cited is

sharply attacked in 29 Illinois Law Review for 1934–1935 at page 218, and further points out that the Nebraska court said:

"While there is a diversity of opinion, the great weight of authority undoubtedly establishes the legality of such procedure," citing *Straus* v. *Chicago Title & Trust Co., supra.*

The available authorities were considered by the appellate court of the first district of Illinois, in *Straus* v. *Chicago Title & Trust Co., supra,* in which case the trust deed provided that in case of foreclosure sale, the trustee might purchase the property "without the possession or production of any of such bonds and coupons or proof of ownership thereof." In discussing the legal effect of its decision that court said:

"We are in accord with the reasoning of the courts in Connecticut, Pennsylvania, Kansas and Iowa rather than with the Federal court and the Supreme Court of Michigan."

The Colorado supreme court in *Cosmopolitan Hotel, Inc.,* v. *Colorado National Bank,* 96 Col. 62 (40 Pac. [2d] 245, 96 A. L. R. 1446), analyzed the foregoing authorities and pointed out that the *Kitchen Bros.* and *Straus Cases* are in conflict with *Werner, Harris & Buck* v. *Equitable Trust Co.* (C. C. A.) 35 Fed. (2d) 513, and *Detroit Trust Co.* v. *Stormfeltz-Loveley Co.,* 257 Mich. 655 (88 A. L. R. 1263).

The "trust deed" in question must be interpreted by and enforced under the laws of Michigan, *Stack* v. *Detour Lumber & Cedar Co.,* 151 Mich. 21, 29 (16 L. R. A. [N. S.] 616, 14 Ann. Cas. 112).

We have recognized the power of contracting parties to agree upon covenants in mortgages contrary

to traditional practice, but we have said in such instances that, while "a court of equity may enforce specifically such an engagement * * * yet such power should be exercised with a full recognition of the settled policy of this State, and should not be exercised except in a case where the right is clearly given by the engagement of the party." *Michigan Trust Co.* v. *Lansing Lumber Co.*, 103 Mich. 392, 402, and *Mutual Benefit Life Ins. Co.* v. *Wetsman*, 277 Mich. 322, 327, 328.

The settled policy of this State is fully discussed in *Detroit Trust Co.* v. *Stormfeltz-Loveley Co., supra, cf.*, in which we passed upon some of the provisions of Act No. 111, Pub. Acts 1931; since that decision the legislature has enacted Act No. 210, Pub. Acts 1933.

We said in *Detroit Trust Co.* v. *Stormfeltz-Loveley Co., supra*:

"We are not in accord with the decision in *Nay Aug Lumber Co.* v. *Scranton Trust Co.*, 240 Pa. 500 (87 Atl. 843, Ann. Cas. 1915A, 235), which fully supports plaintiff's contentions. In *Werner, Harris & Buck* v. *Equitable Trust Co.* (C. C. A.), 35 Fed. (2d) 513, the reasoning of *Nay Aug Lumber Co.* v. *Scranton Trust Co., supra*, is held untenable. We have examined with great care *Colorado & Southern R. Co.* v. *Blair,* 214 N. Y. 497 (108 N. E. 840, Ann. Cas. 1916D, 1177); *Sage* v. *Railroad Co.*, 99 U. S. 334; *Gilfillan* v. *Union Canal Co.*, 109 U. S. 401 (3 Sup. Ct. 304); and *Canada Southern R. Co.* v. *Gebhard,* 109 U. S. 527 (3 Sup. Ct. 363), as well as other cases cited by counsel, and they are not at all controlling in the controversy at bar. The bondholders are entitled to receive what their contract provided for, and cannot be compelled to take in lieu thereof a beneficial interest in a trust uncertain as to time and outcome, and not contemplated by the indenture."

The intent of the parties at the time the agreement was made, as gathered from the entire instrument, controls despite literal terms in derogation of the interior sense of the transaction. It is difficult to assume from the terms of the instrument before us, that at the time the contract was made, the clear intent of the parties was that the trustee would, upon foreclosure, step into the shoes of the mortgagor, and operate the mortgaged premises in the mortgagor's stead. The decree merely substitutes the management of the trustee for that of the mortgagor, and, so far as the bondholders are concerned, it amounts to specific performance of a claimed right of possession without actual sale.

As was said in *Chicago Title & Trust Co.* v. *Robin,* 361 Ill. 261, 266 (198 N. E. 4):

"The powers granted to a trustee in a deed of trust are not liberally construed and their exercise must be consonant with the terms of that instrument. (*Iowa Light, Heat & Power Co.* v. *First National Bank of Boston,* 250 Mass. 353, 145 N. E. 433.) Those powers, furthermore, exist only in the terms creating the trust and no others. (2 Perry on Trusts and Trustees [7th Ed.], § 602g, p. 1027.) Since the contract was carefully drawn and made provision for many contingencies, it may safely be presumed that none of the parties intended that something in addition to its provisions should govern the trustee. This court does not have the power to import into a contract other or additional provisions. To do so would be making a new contract for the parties. (*Burt* v. *Garden City Sand Co.,* 237 Ill. 473 [86 N. E. 1055].) We cannot construe a contract along the line of what we might believe would be a better contract for the parties to make, as equity vests no wide discretion in the chancellor such as would permit him to disturb contract rights of property. (*Merchants Loan &*

*Trust Co.* v. *Chicago Railways Co.* (C. C. A.), 158 Fed. 923.''

Our view, as herein set forth, compels us to hold that the sentence of section 2 of article 10, relied upon by appellee, applies only to the rights of the trustee to foreclose, to collect insurance, to complete the building on the default of the mortgagor, etc., and was not intended to permit the trustee to claim representation for nondepositing bondholders, and, by a purchase under such assumption, compel all bondholders to become tenants in common under the direction and guidance of the trustee for a time not limited by the instrument or to be made compulsory beneficiaries under a trust thus established.

We conclude that the power to purchase on the part of the trustee ''without the possession or production of any of said bonds or coupons or proof of ownership thereof'' is not given by the engagement of the parties.

There remains to be considered appellants' claim that it was the duty of the court to fix the time of sale so as to protect the rights of all parties interested, and to make the sale most profitable to all, and that in directing a sale ''at any time after the 15th day of December, 1935,'' the trial judge failed to perform that duty. Appellants argue that under the instant decree, the trustee is permitted to exercise ''unbridled discretion'' as to the time when the sale shall be held so long as it is after the date mentioned.

Section 14365, 3 Comp. Laws 1929, does not require a circuit judge to fix the time of sale, but a limitation is imposed therein that the decree shall not ''order any lands to be sold within six months after the filing of the bill of foreclosure.'' This question raised by appellants seems to be new as far as the decisions

of this State are concerned, except for dictum in *Redfield* v. *Reid,* 148 Mich. 545. In that case, the plaintiff held a mortgage on parcels A and B and cross-plaintiff held a junior mortgage on parcel B on which it had already obtained a decree of foreclosure. Defendants insisted for the first time on appeal that the cross-plaintiff should be "relegated to its decree of foreclosure and sale in the original case and be decreed to take steps to sell at once." The court pointed out that since the claim was not set up in the answer nor asserted in the court below, it could not be made in the appellate court, and said:

"If, however, the point were properly made, it could not be sustained. It is not in the power of the mortgagor to say when the mortgagee under his decree shall sell. Neither is it in the power of the courts."

This case is included in the annotations in 103 A. L. R. 1441, where the above section is described as admittedly dictum. The annotation of the case therein reported, *Cleveland Trust Co.* v. *Capitol Theatre Co.,* 117 W. Va. 1 (183 S. E. 457), indicates that although "a mortgagee has obtained a decree of sale, he may ordinarily delay indefinitely the actual execution of the decree, even though the mortgage contains no provision therefor."

We hold that the question of when the sale is to be made under a foreclosure in equity is within the sound discretion of the trial judge.

If there were any facts bearing upon this question that the parties believed would have appealed to the sound discretion of the trial judge in fixing the time of sale, such testimony should have been brought to the court's attention. Thus included in the record, the determination could have been reviewed. The

record is silent on this question and for decision, we have only the arguments of counsel, with nothing further upon which to base a review of the trial judge's conclusion as expressed in the decree. We are, therefore, constrained to approve this portion of the decree.

In view of these conclusions, the remaining questions raised by the appeal are not important at this time.

The decree is vacated and the cause remanded for such further proceedings as may be necessary in order that the trial court may enter an amended decree not inconsistent with this opinion. Costs to appellants.

Fead, C. J., and North, Butzel, Sharpe, and Chandler, JJ., concurred with Bushnell, J.

Potter, J. (*concurring*). I agree with Mr. Justice Bushnell.

In *Wurzer* v. *Geraldine,* 268 Mich. 286, it is said:

"Mortgage foreclosure proceedings are special and statutory and not an exercise of inherent equity powers of the court."

This statement is too broad. Though in *Kollen* v. *Sooy,* 172 Mich. 214, it is said:

"The jurisdiction of equity in foreclosure proceedings is purely statutory."

In *Union Trust Co.* v. *Detroit Trust Co.,* 243 Mich. 451, it is said:

"In this State, the jurisdiction of equity in proceedings for the foreclosure of mortgages is governed by statute."

And in *Janower* v. *F. M. Sibley Lumber Co.*, 245 Mich. 571, it is said:

"This court has held that foreclosure of mortgage is not a matter of general equitable cognizance, but a statutory proceeding."

*Wurzer* v. *Geraldine, supra*, was based upon the earlier opinions of this court above quoted.

On the other hand,—

"Courts of equity have inherent original jurisdiction of the subject of mortgages both for the foreclosure and redemption of them." 3 Jones on Mortgages (8th Ed.), § 1840.

"Courts of equity have an inherent original jurisdiction of actions to foreclose a mortgage, and authority to render such judgment or decree as substantial justice between the parties may require." 1 Wiltsie on Mortgage Foreclosure (4th Ed.), § 35.

"Unless prohibited by statute, a court of equity always has jurisdiction of a bill for the foreclosure of a mortgage." 42 C. J. p. 19.

The subject of mortgages and mortgage foreclosure is extensively treated in 3 Pomeroy's Equity Jurisprudence (3d Ed.), §§ 1179–1228.

The earliest case involving the exercise of equitable jurisdiction over a mortgage of real estate dates from the 13th century where the land was pledged for the payment of a certain sum on a date fixed and the creditor fraudulently contrived to procure the imprisonment of the debtor to prevent his redeeming the property pledged, and a bill in equity was filed to obtain relief from the resultant forfeiture and to redeem the land. Case No. 141, Select Cases in Chancery, 10 Selden Society Publications, p. 137.

The early development of real estate mortgages is mentioned in 1 Reeves' History of English Law

(Finlason's Ed.), p. 213; 2 Pollock & Maitland's History of English Law, p. 118; Crabb's English Law, p. 372, and is quite fully discussed in "The Gage of Land in Mediæval England," 3 Select Essays in Anglo-American Legal History, pp. 646–672.

The change from the ancient conception of a real estate mortgage and its effect to a more modern one is quite fully discussed in *Dougherty* v. *Randall,* 3 Mich. 581. In *Batty* v. *Snook,* 5 Mich. 231, it is said:

"What we now call a mortgage was at common law a conditional conveyance of the land, by which the title of the vendee was to terminate or become absolute on the performance or nonperformance of the condition of the grant by the vendor at the day. When such conveyance was made to secure a debt, or for the performance of some other act by the vendor, equity took cognizance of the transaction, and declared the conveyance a security merely for the payment of the debt, or doing of the act, and on the performance thereof by the vendor, after the day had elapsed, and the estate had become absolute, would decree a reconveyance of the premises. To allow the equity of redemption to be cut off by a forfeiture of it in a separate contract, would be a revival of the common-law doctrine, using for that purpose two instruments, instead of one, to effect the object."

The basis of the jurisdiction of equity over mortgages was the fundamental maxim that equity looks at the intent, rather than the form, and the resulting general principle that equity could and should relieve against legal penalties and forfeitures, when the person in whose behalf they were enforced could be fairly and sufficiently compensated by an award of money. 3 Pomeroy's Equity Jurisprudence (3d Ed.), § 1180.

"It is believed that the first encroachments by the courts of chancery were in the reign of Queen Eliza-

beth; but their powers were not fully exercised until the time of James I. Great confusion resulted from these concurrent jurisdictions for a number of years, but the justness and equity of the decrees of the chancellors gradually came to be recognized by the courts of common law and were acquiesced in by them. The rule came to be fixed and settled as part of the law of the kingdom, that 'once a mortgage, always a mortgage,' and that no mortgage could be enforced without a decree of the chancellors." 1 Wiltsie on Mortgage Foreclosure (4th Ed.), § 23.

"The law of mortgages and of equitable foreclosures is, indeed, as has been remarked by Chancellor Kent, 'one of the most splendid instances in the history of our jurisprudence of the triumph of equitable principles over technical rules, and the homage which those principles have received by their adoption in the courts of law.'" 1 Wiltsie on Mortgage Foreclosure (4th Ed.), § 34, citing 4 Kent Commentaries 158.

"The powers and jurisdiction of the circuit courts and circuit judges in chancery, in and for their respective counties, shall be co-extensive with the powers and jurisdiction of the courts and judges in chancery in England as existing on March first, eighteen hundred forty-seven, with the exceptions, additions and limitations created and imposed by the Constitution and laws of this State." 3 Comp. Laws 1929, § 13944.

"No action of ejectment shall hereafter be maintained by a mortgagee, or his assigns or representatives, for the recovery of the mortgaged premises, until the title thereto shall have become absolute upon a foreclosure of the mortgage." 3 Comp. Laws 1929, § 14956.

When a bill is filed to procure the foreclosure or satisfaction of a mortgage, "the court, instead of proceeding to a sequestration, may decree a sale of the mortgaged premises, or of such part thereof as

may be necessary to discharge the mortgage, and the costs of suit, as in other cases." 3 Comp. Laws 1929, § 14347.

The subject of equitable foreclosure of mortgages is treated in 3 Comp. Laws 1929, §§ 14364–14380 as amended, inclusive.

The statutes do provide for many things,—that all bills for the foreclosure or satisfaction of mortgages shall be filed in the circuit court in chancery of the county where the mortgaged premises, or any part thereof, are situated. 3 Comp. Laws 1929, § 14364.

While in England, it is a general principle that a court of equity operates primarily *in personam* and not *in rem,* it may provide for the foreclosure of mortgages out of the realm of England. An English court of equity entertained jurisdiction to foreclose a mortgage in the Island of Sark, *Toller* v. *Carteret,* 2 Vern. 494 (33 Eng. Repr. 916); for the foreclosure of a mortgage on land in the West Indies, *Paget* v. *Ede,* L. R. 18 Eq. 118, 43 L. J. Ch. 571, 30 L. T. 228; in the Isle of Man, *Athol* v. *Derby,* 1 Cas. in Ch. 220 (22 Eng. Rep. 771); and for the enforcement of mortgages on land in Scotland, *Re Courtney, Ex parte Pollard,* Mont. & Ch. (Bankr.) 239; and a clog on title which has been removed as to property in South Africa, *British South Africa Co.* v. *DeBeers Consolidated Mines, Ltd.* (1910), 1 Ch. 354, 79 L. J. Ch. 345, 102 L. T. 95, 26 T. L. R. 285. 13 Halsbury's Laws of England, p. 65.

The statute in this State provides, too, for a decree for deficiency. 3 Comp. Laws 1929, § 14366 as amended by Act No. 229, Pub. Acts 1933. And it has been held the statutory proceeding to collect a deficiency on foreclosure is a new and supplementary proceeding and not a mere continuation of the foreclosure. *Johnson* v. *Shepard,* 35 Mich. 115; *Crawford*

v. *Edwards,* 33 Mich. 354; *Miller* v. *Thompson,* 34 Mich. 10; *Taylor* v. *Whitmore,* 35 Mich. 97; *Higman* v. *Stewart,* 38 Mich. 513; *Winans* v. *Wilkie,* 41 Mich. 264; *Booth* v. *Connecticut Mutual Life Ins. Co.,* 43 Mich. 299; *Gage v. Jenkinson,* 58 Mich. 169; *Shelden* v. *Estate of Warner,* 59 Mich. 444; *Winsor* v. *Ludington,* 77 Mich. 215; *Corning* v. *Burton,* 102 Mich. 86; *Union Trust Co.* v. *Detroit Motor Co.,* 117 Mich. 631.

"The practice  *  *  *  of allowing a personal decree against even the mortgagor himself comes from no original equitable jurisdiction, but springs from quite recent statutory authority." *Gage* v. *Jenkinson, supra.*

"The power to make a personal decree against the makers of a mortgage upon real estate, or against others interested in its payment, upon a foreclosure in chancery, comes entirely from the statute." *Winsor* v. *Ludington, supra.*

The whole doctrine of rendering personal decrees in equitable proceedings for foreclosure is in this State statutory. And under the law of this State, after a bill in equity is filed to foreclose a mortgage, no proceedings whatever shall be had at law for the recovery of the debt secured by the mortgage, or any part thereof, unless authorized by the court in which the suit in chancery is pending. 3 Comp. Laws 1929, § 14367. Specific provisions are made for the foreclosure of real estate mortgages upon default in the payment of instalments due thereon. 3 Comp. Laws 1929, §§ 14375–14378. And in the particulars covered by statute, the statute governs.

The cases above first discussed ought not to be construed to militate against the established rule that courts of equity have original jurisdiction of the subject of foreclosure of real estate mortgages. In so

far as *Wurzer* v. *Geraldine, supra; Kollen* v. *Sooy, supra; Union Trust Co.* v. *Detroit Trust Co., supra;* and *Janower* v. *Sibley Lumber Co., supra,* militate against the views expressed herein, they should be overruled.

Wiest, J. (*dissenting*). The trustee invoked the powers of the court of chancery in foreclosure of the trust mortgage and thereby subjected itself, as trustee, to the direction of the court within the terms of the mortgage and, upon foreclosure and sale if purchase is made by the trustee, then to further administration of the trust, as provided in the indenture, and under the direction of the court acting in the capacity of universal trustee. The court of chancery in such capacity has power sufficient to meet needs.

"The powers and jurisdiction of the circuit courts and circuit judges in chancery, in and for their respective counties, shall be co-extensive with the powers and jurisdiction of the courts and judges in chancery in England as existing on March first, eighteen hundred forty-seven, with the exceptions, additions and limitations created and imposed by the Constitution and laws of this State." 3 Comp. Laws 1929, § 13944.

In foreclosure of a trust deed mortgage the court may authorize the trustee to purchase at the sale. When the trustee is the purchaser the trust attaches to the *res* in behalf of the beneficiaries.

The question upon which we divide is whether a court may, by decree of foreclosure, authorize the trustee to purchase at the sale without having possession of the outstanding bonds.

It may be conceded that under the decision in *Detroit Trust Co.* v. *Stormfeltz-Loveley Co.,* 257 Mich. 655 (88 A. L. R. 1263), the bondholders, secured by

a trust mortgage, are entitled to receive what their contract calls for and may not be compelled to take, in lieu thereof, beneficial interests in a trust, uncertain as to time and outcome and not contemplated by the trusteed mortgage. But that does not decide this case, for the trust mortgage not only contemplates but authorizes the trustee to purchase in their behalf, and no bondholder is here objecting. The contest is by the mortgagor and not in the interests of the bondholders but confessedly directly against their rights under the instrument. In support of this statement, we quote the following from the brief in behalf of the mortgagor:

"The amount due under the mortgage for principal and interest at the present time is over $1,150,000. The court will take judicial notice of the fact that there has been a depression in real estate and that most of the mortgages made in 1925 were made upon high valuations. There is every possibility that if the trustee or any other bidder is compelled to pay cash or deposit bonds in the payment of any bid, the amount bid for the property would be much lower than if the trustee could bid in the property without payment of cash or depositing bonds. For example: assume the trustee had on deposit 50 per cent. of the bonds and bid $500,000 for the property, which perhaps would represent fair market value of the property today. The trustee could pay for the property by depositing the 50 per cent. of the bonds on deposit with it and having credited thereon such deposited bonds' *pro rata* portion of the purchase price, leaving the balance of the purchase price, to-wit: $250,000, to be paid in cash for the benefit of nondepositing bondholders. The fact that the trustee must pay in cash or deposit bonds compels the trustee to bid an amount commensurate with the fair value of the property and permits defendants to redeem at such

price. This is a distinct advantage that defendants are entitled to through their contractual rights under the trust agreement. The defendants are thereby given the oportunity to reorganize through the sale of their equity of redemption. If, however, the property were bid in for the full amount of the indebtedness, it is clear that the amount necessary to be paid in order to redeem would be so great as to preclude the sale of the equity of redemption; destroy its value to defendants and deprive them of the exercise of the advantage secured to them under their contract.''

This is a far cry from the spirit of the *Stormfeltz-Loveley* rule, and would employ that case as a weapon against the bondholders. That case warrants no · such action. Neither do principles of equity nor the trust instrument constrain us so to mulct the bondholders in order to enable the mortgagors to have an equity of redemption that will bring them something at the cost of the bondholders.

We now turn to the trust instrument provisions, so far as they relate to the powers vested in the trustee. The indenture is a long instrument, covering 109 pages of the printed record, contains 13 articles, with numerous sections and capitalized headings; the latter, however, of no consequence for section 13 of article 13, provides:

''It is hereby expressly agreed and understood, by, between and among all parties to or interested in or who shall become party to or interested in or under this trust deed, that the several headings in capital letters of each article hereof are not and are not to be taken or construed as any part of this instrument, and shall not be read, considered or construed as enlarging, diminishing, defining or limiting any provisions or text hereof, but are only

placed herein as a convenience and for more ready reference.''

In quoting the powers vested in the trustee by the instrument we omit alternative powers in the beneficiaries in case the trustee declines to exercise the powers vested in it.

Article 7 authorizes the trustee, in its discretion and without any action on the part of any bondholder, to declare the principal of all outstanding bonds to be due and payable immediately in case default is made in the payment of the principal or of any interest on the bonds.

Article 9 provides:

"In any case in which, under the provisions of article 7 of this indenture, the trustee * * * may * * *

"Proceed to protect and enforce its rights and the rights of the bondholders herein, either by suit or suits in equity or at law, in any court or courts of competent jurisdiction, whether for specific performance of any covenant or agreement contained herein or in aid of the execution of any powers herein granted or for any foreclosure hereof or hereunder, or for any other sale of the mortgaged premises or any part thereof, so far as may be authorized by law, or for the enforcement of such other or additional appropriate legal or equitable remedy as the trustee may deem most effectual to protect and enforce the rights aforesaid. * * *

"At any such sale any bondholders or coupon holders or any committee or trustee appointed by them or a part of them, or the trustee or any successor in trust herein named may bid for and purchase said mortgaged premises or any part thereof. * * * Should the trustee become the purchaser at such sale, the following rights, privileges and obligations shall thereupon be credited, result and ob-

tain: (a) All the bondholders shall contribute and pay the trustee their respective and proportionate share (in proportion to the amount of unpaid bonds and matured coupons owned by them respectively) of the total of the items referred to in subparagraphs (a) and (b) of section 4 of this article, for which contribution and payment they shall be respectively liable as for money paid by the trustee at their request and in default of such contribution and payment, and as a cumulative and not alternative right, the trustee shall have a lien therefor upon the interest of such defaulting bondholders in said premises or in the proceeds received by the trustee upon any subsequent sale thereof; (b) the trustee may forthwith or at any time thereafter sell and convey said premises as a whole or in such parts and parcels and for such price and upon such terms as to it in its sole discretion may seem proper, but shall in no event sell for less than an aggregate amount which will be sufficient to pay each bondholder his, her or its amount found due for principal, interest and any advances made or assessed to him, her or it hereunder, and any and all outlays, expenses, costs or attorney's or trustees' or receivers' fees, not otherwise met and paid out of rents, or by the grantor, unless the consent in writing of bond and coupon holders having and owning one-half of the entire mortgage indebtedness found to be due upon such foreclosure shall be first procured by or be given to said trustee, and (c) until the trustee shall thus sell and dispose of said premises, it shall be entitled to enter upon and take possession of the same, complete the construction and equipment of any building, lease or operate, maintain and manage the same by such agents, servants and attorneys as it may select, and receive and collect the rents, earnings, incomes and profits thereof, and pay therefrom and from the proceeds of any sale thereof, all proper costs, charges and expenses

of such construction and equipment, taxes, insurance premiums and cost of maintenance, including reasonable compensation for such trustee, its servants, agents and attorneys, and distribute the remainder of moneys thus received by it ratably among those entitled thereto. * * *

"Every holder of any of the bonds hereby secured, including pledgees, accepts the same subject to the express understanding and agreement that every right of action, whether at law or in equity upon or under this indenture, is vested exclusively in the trustee as trustee of an express trust, and under no circumstances shall the holder of any bond or coupon, or any number or combination of such holders, have any right to institute any action at law upon any bond or bonds or any coupon or coupons, or otherwise, or any suit or proceeding in equity or otherwise, except in case of refusal on the part of the trustee to perform any duty imposed upon it by this indenture after request in writing by the required number of holders of bonds and/or coupons as aforesaid and except upon deposit of said bonds with said trustee and furnishing it with satisfactory indemnity as herein otherwise provided." .

Article 10, § 2, provides:

"The trustee shall not be under any obligation to recognize any person, firm or corporation as the holder or owner of any of the bonds secured hereby or to do or refrain from doing any act pursuant to the request of any person, firm or corporation, professing to be or claiming to be such holder or owner, until such supposed holder or owner shall produce the said bonds and deposit the same with the trustee in the respective cases and instances herein required and specified. But all powers and rights of action hereunder may be exercised and enforced at all times by the trustee, at its election,

without the possession or production of any of said bonds or coupons or proof of ownership thereof at any time whatsoever.''

In these provisions I find ample power authorizing the decree permitting the trustee to purchase at the foreclosure sale without having the bonds in its possession.

In 1 Restatement of the Law of Trusts, § 231, it is said:

"If the trustee properly holds in trust a mortgage upon real property and the mortgage is foreclosed, the trustee can properly purchase the property on foreclosure, if it is prudent to do so in order to avoid a loss, although the trustee is not authorized to invest in the purchase of real property. He is under a duty, however, to sell the property when he has a reasonable opportunity to do so.''

In such case the trustee buys the property in and holds it for the benefit of the bondholders. The purpose of the decree authorizing the trustee to purchase at the sale is to avoid a loss to the bondholders.

The very reason urged by the mortgagor in this case against purchase by the trustee was the reason given by the Florida court in *Smith* v. *Massachusetts Mutual Life Ins. Co.*, 116 Fla. 390, 411 (156 South. 498, 95 A. L. R. 508), why he should purchase. We quote:

"If, as was expressly provided, the trustee was authorized to purchase the property at judicial sale, circumstances might become such that it would be its absolute duty to do so, and we think the record in this case, in connection with the judicial notice which we have of the extreme deflation in real estate values which took place after the collapse of the boom of 1925 and the almost total lack of market

for real estate which existed in Dade county at the time this sale took place, were such as to make it the duty of the trustee to bid in and purchase the incumbered property at the foreclosure sale for the bondholders.''

I cannot join in an opinion that denies this right, militates against the bondholders' rights and brings to the mortgagor an inequitable advantage.

The decree should be affirmed.